**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1309, 24-1310 & 24-1311
_____

UNITED STATES OF AMERICA

v.

RANDALE CHAPMAN,
                                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Nos. 2-11-cr-00045-007, 2-21-cr-00073-001 & 2-21-cr-00133-001)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 21, 2026

Before: RESTREPO, FREEMAN, and MASCOTT, *Circuit Judges*

(Opinion filed: April 22, 2026)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Randale Chapman appeals his convictions in two criminal cases and his supervised release revocation in a third case. For the reasons that follow, we will affirm all three judgments.

## I

In 2013, Chapman was convicted and sentenced in federal court for conspiracy to possess heroin with the intent to distribute and possession of a firearm in furtherance of a drug trafficking offense (the "2013 Convictions").[1] In 2019, he was released from his term of imprisonment for those convictions and began his supervised release.

While Chapman was on supervised release in April 2020, police pulled over the car he was driving in Pittsburgh, Pennsylvania. During the traffic stop (the "April 2020 Traffic Stop"), officers reported smelling a strong odor of marijuana from inside the car. Chapman told them that he had recently smoked "weed" in the car but none remained in the car. App. 42. Officers ordered Chapman and his passenger out of the car and said they were going to search the car because of the marijuana odor.

When the officers began searching the car, Chapman bolted. The officers gave chase, caught Chapman, and detained him. When they searched his pockets, they found 19 fentanyl pills divided between two baggies, 15 methamphetamine pills divided between two baggies, 14 gummy bears containing methylenedioxyamphetamine (MDA),

---

[1] Those convictions were in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c), respectively.

and over $1,400 in cash. There were two $100 bills on the outside of the wad of cash, and inside the wad there were 14 separate bundles in the amounts of $30, $600, $38, $20, $20, $20, $100, $10, $90, $10, $10, $45, $200, and $9. At Chapman's trial, a government expert testified that the smaller bundles of cash were consistent with street-level drug distribution.

As the officers and Chapman walked back toward the car, Chapman said, "It's mine, whatever you all find." App. 46. The officers found a loaded pistol under the driver's seat and a small amount of marijuana in the driver's door pocket. Chapman told the officers that the pistol was his and he tucked it under the seat when he got pulled over.

The officers arrested Chapman, and he was released on state bond. He later absconded from that bond and from his federal supervised release, and the U.S. Probation Office petitioned to revoke his supervised release.

In February 2021, law enforcement received a tip that Chapman was living at Lisa Gilmore's Pittsburgh apartment and selling drugs from the parking lot. Officers surveilled Chapman's activity in the parking lot for two days and saw him engage in a hand-to-hand transaction and other activity consistent with drug distribution. On the second day of surveillance, officers arrested Chapman while he was in the rear seat of an Infiniti SUV occupied by two other people. Officers found 20 oxycodone pills on Infiniti SUV's front driver's seat. They also recovered Chapman's cell phone and a key to Gilmore's apartment.

3

After arresting Chapman (the "February 2021 Arrest"), the officers proceeded to Gilmore's apartment. Gilmore declined consent to a search of the apartment, but she stepped into the hallway and left the apartment door open while talking to the officers. Two officers with their guns drawn looked inside the apartment through the open door, and then conducted a protective sweep of the apartment.

To obtain a warrant to search the apartment, an officer attested, among other things, that the officers who looked inside the apartment saw Chapman's jacket and a brown paper bag that Chapman had carried away from one of the suspected drug transactions in the parking lot. A magistrate judge issued the warrant that same day. Upon searching the apartment, officers found 200 oxycodone pills in Chapman's jacket. The markings on those pills matched the markings on the pills found in the Infiniti SUV. The officers also found nearly $9,000 in cash near a box containing MDA pills, methamphetamine powder, empty plastic baggies like the ones storing the oxycodone pills, and mail bearing Chapman's name.

A subsequent search of Chapman's cell phone revealed text messages that a government expert testified were about drug sales. Some of those text messages were exchanged with the driver of the Infiniti SUV.

## II

After the February 2021 Arrest, the government petitioned to revoke Chapman's supervised release for the 2013 Convictions. Shortly thereafter, a grand jury returned an indictment charging Chapman with three counts arising from the April 2020 Traffic Stop: (1) possession with intent to distribute substances containing fentanyl, methamphetamine,

4

and MDA, in violation of 21 U.S.C. § 841, (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c), and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). A month later, a grand jury returned a second indictment charging Chapman with one count based on the February 2021 events: possession with intent to distribute methamphetamine and oxycodone, in violation of 21 U.S.C. § 841. The government moved to join the two indictments for trial. Chapman consented to the joinder, and the District Court granted the government's motion.

Before trial, Chapman moved to suppress the fruits of the April 2020 car search and the February 2021 search of Gilmore's apartment. He also moved to prevent introduction of his prior drug and gun convictions, and he asked the court to limit the reciprocal use of evidence from his two joined cases. The District Court denied all three motions.

During trial, the government elicited testimony about Chapman's prior conviction for conspiracy to distribute heroin, but its witnesses did not mention Chapman's prior firearm conviction. Chapman then testified on his own behalf. On direct examination, he twice told the jury that he had a prior conviction for possession of a firearm in furtherance of drug trafficking. As to the current charges, he said he had acquired the pistol "literally two minutes" before the April 2020 Traffic Stop and had never carried a

gun on any other date.[2]  App. 535.  He said he asked a friend for a gun on that date because someone said something threatening to him the day before.

About the drugs found on his person during the April 2020 Traffic Stop, Chapman testified that he thought the fentanyl and methamphetamine pills were Percocet and Ecstasy—the two drugs that he personally used—and he was told the gummies contained THC (not MDA).  When asked what he was planning to do with all these drugs, he responded, "Those drugs specifically, I was saving for myself, because once I get to a certain amount, I don't sell them no more, because I need them for my personal use." App. 538.  On cross examination, he clarified that he had been selling drugs from the supply found in his pockets during the April 2020 Traffic Stop but he only did so to support his own drug habit.  The prosecution then questioned how he could have tested negative for drugs several times in early 2020 if he was a drug user.  Chapman said he used a variety of methods: using someone else's urine, diluting his own urine, or stopping his drug use for three days in advance of a drug test.

Regarding the February 2021 events, Chapman testified that he was staying at Gilmore's apartment, the box containing drugs was his "party box," App. 540, and the nearly $9,000 in cash belonged to him.  He also admitted that, at that time, he was making money selling drugs.

---

[2] He testified that his prior firearm conviction involved a loaded gun found in his home, not on his person.

6

The jury convicted Chapman on all counts, and the District Court revoked his supervised release from the 2013 Convictions. The court then sentenced Chapman to an aggregate term of 420 months' imprisonment for the new convictions and a concurrent term of 24 months' imprisonment for the supervised release violations. It also imposed a six-year term of supervised release for the new convictions. Chapman timely appealed all three judgments.

## III[3]

On appeal, Chapman challenges the District Court's admission of his 2013 Convictions and the reciprocal use of the evidence from the joined cases. He also challenges the court's orders declining to suppress evidence gathered in the car search and the apartment search. None of Chapman's arguments warrants relief.

### A

Chapman argues that the District Court failed to articulate how a jury could consider the 2013 Convictions or the reciprocal use of the evidence from the joined cases without inferring that Chapman had a propensity to commit crime. *See United States v. Brown*, 765 F.3d 278, 292–93 (3d Cir. 2014). We review evidentiary rulings for abuse of discretion, but our review is plenary "to the extent [evidentiary rulings] are based on a legal interpretation of the Federal Rules of Evidence." *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014). The erroneous admission of propensity evidence does not

---

[3] The District Court had subject-matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583. We have jurisdiction pursuant to 28 U.S.C. § 1291.

7

necessitate reversal where the error is harmless—that is, where it is "highly probable that the error did not contribute to the judgment." *Id.* at 285 (quoting *United States v. Cunningham,* 694 F.3d 372, 391–92 (3d Cir. 2012)). Such is the case with any error here.

Chapman admitted at trial that he sold drugs from the stash seized from his person during the April 2020 Traffic Stop and that he had been making money selling drugs at the time of the February 2021 events. Those admissions are consistent with the large quantities of cash and the array of drugs he had on both dates of arrest.[4] Chapman also admitted that he possessed the pistol on the date of the April 2020 Traffic Stop and that he had prior felony convictions at the time. Given all this, we are convinced that neither the evidence of the 2013 Convictions nor the reciprocal use of the evidence from the joined cases contributed to the challenged judgments.

### B

When a district court denies a suppression motion, we review its legal conclusions de novo and its findings of fact for clear error. *United States v. Jackson*, 120 F.4th 1210, 1217 (3d Cir. 2024). Chapman challenges only legal conclusions, so our review is de novo.

### 1

In seeking to suppress evidence found during the April 2020 Traffic Stop, Chapman argues that the smell of marijuana alone does not constitute probable cause. In the District Court, his argument relied on Pennsylvania's 2016 law legalizing the medical

---

[4] Many of those drugs were not even the varieties Chapman claimed to use.

use of marijuana and the Pennsylvania Supreme Court's subsequent decision that the smell of marijuana alone cannot constitute probable cause for a search. *See Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021). On appeal, he also points to the 2018 federal statute legalizing hemp, and he argues that hemp has the same smell as marijuana, so that odor alone cannot establish probable cause.[5]

The District Court rejected Chapman's challenge, relying in part on our precedent that "the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Chapman contends that *Ramos* cannot apply here because cannabis is no longer per se criminal. We disagree.

Probable cause requires "known facts and circumstances . . . sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Bufkin v. Collins*, 604 U.S. 369, 384 (2025) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). At the time of the April 2020 Traffic Stop, marijuana was illegal under federal law (and it remains illegal today). It also was illegal under Pennsylvania law unless the person possessing or using it had a valid state-issued medical marijuana card. So when officers smelled a strong odor of marijuana from the car Chapman was driving, and when Chapman admitted to smoking "weed" in the car that day (without offering to produce a medical marijuana card), the officers had articulable

---

[5] The government argues that Chapman failed to preserve the portion of his argument that relies on changes to federal law. We assume without deciding that Chapman's probable cause challenge is fully preserved.

and particularized grounds to believe that evidence of *illegal* marijuana would be found in the car.[6]

## 2

Although the police had a warrant to search Gilmore's apartment, Chapman argues that the warrant was tainted by information from the officers' pre-warrant look inside Gilmore's apartment.[7]  Even if the pre-warrant look was unlawful, the results of the subsequent search remain valid under the independent source doctrine.  *See United States v. Price*, 558 F.3d 270, 281 (3d Cir. 2009); *United States v. Herrold*, 962 F.2d 1131, 1144 (3d Cir. 1992).  The District Court found (and Chapman does not challenge) that the officers would have applied for the search warrant even without seeing Chapman's belongings inside the apartment.  Additionally, the warrant application established probable cause without the information gleaned from the officers' look inside the apartment.  Among other things, the affidavit stated that a known informant reported that Chapman was living in the apartment and dealing drugs from the parking lot; officers saw Chapman coming and going from the apartment building and using a key to get inside; officers saw Chapman engage in a hand-to-hand transaction and other activity consistent

---

[6] To the extent that Chapman argues that the differences between state and federal law here lead to arbitrary results amounting to a constitutional violation, we are unpersuaded. While both state and federal protections against unlawful search and seizure must satisfy the requirements of the Fourth Amendment, there is no requirement that the protections of state and federal law be the same.

[7] For the first time on appeal, Chapman also argues that the warrant was tainted by information from the April 2020 car search.  Regardless of any preservation concerns, this argument fails because the car search was lawful.

with drug dealing in the parking lot; Chapman was arrested in the parking lot in an SUV containing suspected drugs; and Chapman had an apartment key and cash on his person when he was arrested.  This sufficed for probable cause to search the apartment for evidence of drug dealing.  *See United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002).

\*     \*     \*

For the foregoing reasons, we will affirm the District Court's judgments.